# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

AARON SCOTT,

|  |  |  |
|---|---|---|
| Petitioner, | : | Case No. 3:12-cv-146 |
| - vs - |  | District Judge Walter Herbert Rice |
|  |  | Magistrate Judge Michael R. Merz |
| TERRY TIBBELS, WARDEN, |  |  |
|   Mansfield Correctional Institution, |  |  |
|  | : |  |
| Respondent. |  |  |

# REPORT AND RECOMMENDATIONS

Petitioner Aaron Scott brought this habeas corpus action *pro se* under 28 U.S.C. § 2254 to seek release from his sentence of twenty-five years to life imprisonment upon his conviction in the Montgomery County Common Pleas Court for murder and aggravated robbery.  He pleads the following grounds for Relief:

> **Ground One:**  The Petitioner was denied a fair trial and due process of law in violation of the Fifth and Fourteenth Amendment [sic] to the United States Constitution when the trial court deprived Petitioner [of] his substantive right to confront accusers and present an adequate defense.
>
> **Ground Two:**  The Petitioner was denied due process of law in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when his indictment failed to contain the essential elements to charge an offense.
>
> **Ground Three:**  The Petitioner was denied his constitutional right to a fair trial when the chain of custody was not established to show that no contamination took place by the State's expert witness.

1

**Ground Four**:  The Petitioner was denied his constitutional right to effective assistance of trial counsel and fair trial when trial counsel undermines the proper functioning of the adversarial process by causing evidence not to be given to the jury, and fails to object to the use of inadmissible evidence, and fail [sic] to challenge the narrow focus of the investigators, all of which affected the result of the trial.

**Ground Five:**  The Petitioner is denied his right to a fair trial when the trial court abuses its discretion in admitting prejudicial evidence, and allowing the State to recall an expert witness, and not letting in evidence of prior contamination.

**Ground Six:**  The Petitioner was denied his right to effective assistance of appellate counsel when counsel omits raising errors that could have effected [sic] the result of the appeal in favor of the Petitioner or at least not cause the claims to possibly be procedurally defaulted.

(Petition, Doc. No. 1.)

## Procedural History

On the evening of May 21, 2004, Chad Stapleton was stabbed to death during an apparent armed robbery.  Petitioner Aaron Scott was indicted for those two offenses in May, 2006, by the Montgomery County grand jury.  On May 5, 2008, a jury convicted Scott on both charges and he was sentenced to the term he is now serving.  The conviction was affirmed by the Second District Court of Appeals.  *State v. Scott*, 2010 Ohio 1919, 2010 Ohio App. LEXIS 1576 (2nd Dist. Apr. 30, 2010).  Scott timely appealed to the Ohio Supreme Court which declined to exercise jurisdiction.  *State v. Scott,* 126 Ohio St. 3d 1584 (2010).Scott applied to reopen his direct appeal under Ohio R. App. P. 26(B) to raise claims of ineffective assistance of appellate counsel, but the court of appeals found there were no colorable ineffective assistance of appellate counsel claims. *Id.*, Exhibit 26, PageID 2918-2927.  The Ohio Supreme Court again declined to

2

exercise jurisdiction.  *Id.* at Exhibit 30, PageID 2950.  Finality was delayed until April 21, 2011, by a motion for resentencing which is not material to the issues in the habeas petition which was timely filed May 21, 2012.  Respondent has filed a Return and Supplemental Return of Writ (Doc. No. 19) and Petitioner has filed a Traverse (Doc. No. 24), making the case ripe for decision.

## Ground One:  Denial of Confrontation Rights

In his First Ground for Relief, Scott asserts he was denied his right to confront the witnesses against him when the trial court refused to permit his counsel to cross-examine the State's serology expert about "contamination of samples for which she had been placed on probation."  (Petition, Doc. No. 1, PageID 34.)  Trial counsel was also precluded from questioning State's witness Lona Westbrook "about any plea deal she might have entered into and/or whether she expected something in return when she made her statement to the police."  *Id.*

Respondent concedes this claim has been preserved for merits consideration by this Court, but asserts the Second District Court of Appeals' decision on these two issues is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685,

3

693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

In deciding the two issues presented by the First Ground for Relief, the court of appeals held:

[*P20]    Scott's    first    assignment    of    error    states:

[*P21] "THE TRIAL COURT ERRED WHEN IT LIMITED DEFENDANT-APPELLANT'S COUNSEL'S CROSS-EXAMINATION OF STATE WITNESSES IN VIOLATION OF THE DEFENDANT-APPELLANT'S RIGHT TO CONFRONT WITNESSES, HIS RIGHT TO PRESENT A DEFENSE, HIS RIGHT TO A FAIR TRIAL, AND TO DUE PROCESS OF LAW UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."

[*P22] Scott argues that the trial court erred in limiting his cross-examination of several witnesses.

[*P23] The trial court has broad discretion in imposing limits on the scope of cross-examination. *State v. Green* (1993), 66 Ohio St.3d 141, 147, 1993 Ohio 26, 609 N.E.2d 1253; *State v. Cobb* (1991), 81 Ohio App.3d 179, 183, 610 N.E.2d 1009. An appellate court will not interfere with a trial court's decision about the scope of cross-examination absent an abuse of discretion. *In re Fugate* (Sept. 22, 2000), Darke App. No. 1512, 2000 Ohio App. LEXIS 4306. The term abuse of discretion "connotes more than an error in *** judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 Ohio B. 481, 450 N.E.2d 1140.

[*P24] Scott contends that the trial court erred in not allowing defense counsel to question Lona Westbrook about any deal she might have made with the State, because the trial court had concluded that she had not been offered a deal in exchange for her testimony. Scott asserts that "it is not up to the judge to determine whether or not there was a deal, as that is a question of fact for the jury." Scott also claims that the trial court's pretrial ruling that the defense could not ask Westbrook at trial about her subjective motivation for cooperating with the police was an unconstitutional restriction on his right to confront the witnesses against him.

[*P25] Westbrook did not talk with the police about Scott's actions the night of Stapleton's murder until 17 months after the

crime, when a detective knocked on her apartment door in December 2005. In the interim, in June 2005, Westbrook had been charged in an unrelated case with three counts of trafficking in drugs and two counts of witness intimidation. Her first trial on the trafficking counts resulted in a mistrial; she subsequently pled guilty to two counts of trafficking, in exchange for which the other count of trafficking was dismissed. A jury found Westbrook guilty of one count of witness intimidation and not guilty of the other. In April 2006, she was sentenced to community control for the offenses of which she was convicted. She testified against Scott in 2008.

**[\*P26]** Scott anticipated questioning Westbrook about whether she had received or had hoped for favorable treatment from the State on the trafficking and witness intimidation charges when she talked to the police or testified about Scott's behavior on the night of Stapleton's murder. The trial court had held a pretrial hearing on this and other issues. At the hearing, Westbrook testified that there had been no discussions of a deal in exchange for helpful information and that she had not received any benefit from her testimony. The prosecutor in the trafficking and witness intimidation cases also stated that "there were no discussions at all about Lona Westbrook becoming a witness in the homicide case." Likewise, Westbrook's defense counsel stated that "at no point did anyone from the prosecutor's office, a police department, or any representative of the government ever approach [him] about [Westbrook] being able to help in the investigation, nor did Miss Westbrook ever communicate any knowledge to me about a homicide, her having information of a homicide or being able to help herself in any way with her cases."

**[\*P27]** In light of these representations, the prosecutor in Scott's case argued that it would be improper to allow defense counsel to question Westbrook about the existence of such a deal or about her subjective hopes for favorable treatment. The trial court made a preliminary ruling in favor of the State: "I'm having trouble understanding why you [Scott] should be permitted to ask her a question [about the expectation of favorable treatment] that you know ahead of time you're not going to be able to disprove her denial from anybody else involved in the case." The court was willing, however, to allow defense counsel to voir dire Westbrook to determine whether the proposed testimony would be permitted. Although defense counsel disagreed with the court's ruling, he did not object to this examination of Westbrook. At the hearing, Westbrook denied any promises and specifically denied that she was "trying to help [her]self out by talking to the police," or that

5

she "had any hope or reason to believe [speaking to the detective] would help [her] case." Discussions in chambers after Westbrook testified at the hearing were not transcribed, but there is no indication that the court changed its preliminary ruling that such questioning of Westbrook would not be allowed. Subsequently, new counsel became involved, and the trial was reset.

[*P28] Before Westbrook testified at trial, the trial court reiterated its ruling, stating that "[t]here will be no questioning of Lona Westbrook regarding any plea deal because there was no deal." Scott did not object at trial to the trial court's restatement of its ruling.

[*P29] A ruling on a motion in limine reflects the court's "anticipatory treatment of the evidentiary issue. In virtually all circumstances finality does not attach when the motion is granted. Therefore, should circumstances subsequently develop at trial, the trial court is certainly at liberty 'to consider the admissibility of the disputed evidence in its actual context.'" *State v. Grubb* (1986), 28 Ohio St.3d 199, 201-202, 28 Ohio B. 285, 503 N.E.2d 142, quoting *State v. White* (1982), 6 Ohio App.3d 1, 4, 6 Ohio B. 23, 451 N.E.2d 533. For those reasons, a motion in limine generally does not preserve for purposes of appeal any error in the disposition of the motion in limine. The failure to object at trial to the exclusion of evidence constitutes a waiver of the challenge. *State v. Davis*, Montgomery App. No. 2079, 2005 Ohio 5783, at P27.

[*P30] In this case, however, the matter of cross-examining Westbrook about her motivation for cooperating with the police had been thoroughly addressed at a pretrial hearing. At trial, the trial court stated its unwillingness to consider the issue further. Under these circumstances, it would put form over substance to find that Scott failed to object to the trial court's ruling. This, we conclude that this issue is adequately preserved for appeal.

[*P31] Evid.R. 611(B) allows cross-examination of a witness "on all relevant matters and matters affecting credibility." A cross-examiner may ask a question if he or she has a good-faith belief that a factual predicate for the question exists. *State v. Brinkley*, 105 Ohio St.3d 231, 2005 Ohio 1507, at P109, 824 N.E.2d 959; *State v. Gillard* (1988), 40 Ohio St.3d 226, 533 N.E.2d 272, 535 N.E.2d 315, paragraph two of the syllabus, abrogated on other grounds, *State v. McGuire*, 80 Ohio St.3d 390, 1997 Ohio 335, 686 N.E.2d 1112. See, also, *State v. Lanier* (Dec. 17, 1999), Montgomery App. No. 17594, 1999 Ohio App. LEXIS 6041. Further, Evid.R. 616(A) provides that a witness may be impeached

by showing "bias, prejudice, interest, or any motive to misrepresent" through examination of the witness or by extrinsic evidence. "A questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact." Evid.R. 607(B).

**[\*P32]** Westbrook first talked with the police in December 2005, 17 months after the crime, about Scott's actions the night of Stapleton's murder. Although she did not initiate this conversation, charges were pending against her at that time. In light of the testimony and representations by counsel at the pretrial hearing, Scott's attorney did not have a good faith basis to believe that Westbrook had made a deal with the police to obtain a benefit in her own criminal cases in exchange for her cooperation. See *Brinkley* at P110. However, the fact that charges were pending at the time of Westbrook's conversation with the police did give counsel a good faith basis to ask whether Westbrook had subjectively hoped for favorable treatment when she cooperated with police, which was relevant to bias, prejudice, and motive. Evid.R. 611(B); Evid.R. 616(A). If, in response to such questioning, Westbrook had denied that she was motivated by a desire for favorable treatment, the defense would not have been able to refute this answer or, later, argue the point, but the jury, at least, would have been able to assess Westbrook's credibility on this point. Thus, the trial court should have permitted limited cross-examination of Westbrook about her reasons for cooperating with the police.

\* \* \*

**[\*P41]** Finally, Scott contends that he should have been allowed to cross-examine Amy Rismiller about contamination of DNA samples. Rismiller testified about the collection of blood, saliva, and sweat from items found at or near the crime scene and from the victim's clothing, but she had not performed the DNA analysis in this case. Scott sought to question Rismiller about a memorandum from her technical leader at the Miami Valley Regional Crime Lab to a supervisor about prior, unrelated contamination of DNA evidence during analysis, a matter for which she had apparently been disciplined in the past. The State argued that Rismiller was called as a serology expert, not a DNA analyst, in Scott's case, and that the alleged errors did not affect Rismiller's qualifications as an expert. The trial court ruled that Rismiller's qualifications as a DNA analyst were not relevant because she was not called to testify about DNA. [Footnote omitted.]

**[\*P42]** In our view, the defense, in an attempt to impeach an expert opinion, should have been permitted to cross-examine Rismiller about any documented issues concerning her handling of specimens, even if her specific role in the prior case were different from the her role in Scott's case (i.e., the collection v. the analysis of DNA evidence). The State certainly could have, if necessary, rehabilitated Rismiller on re-direct examination by showing that the alleged previous errors were unrelated to the collecting, testing, and opinion in this case. Thus, the trial court erred in preventing the defense from pursuing this line of cross-examination.

**[\*P43]** Although we have concluded that the trial court unduly restricted the cross-examination of Westbrook and Rismiller, on the whole, the evidence against Scott was quite strong. His DNA and the victim's blood were found on a red t-shirt discarded in Scott's apartment complex. Scott claimed that he had left this t-shirt on his patio, where it could have been stolen, because it was moldy, but the DNA analyst testified that there was no mold on the t-shirt. Scott's saliva was also found on Stapleton's shirt. A knife that matched a set at Scott's apartment was found at the murder scene. Westbrook and her son testified that Scott came to their apartment around the time of the murder, breathless and sweaty, and asked for a new shirt. According to the son, Scott was also covered in blood. A short time later, when the police responded to the scene, Scott suddenly disappeared while walking in the apartment complex with Westbrook. Due to the strength of this evidence, the errors in limiting cross-examination were harmless beyond a reasonable doubt, and Scott was not unfairly prejudiced by the trial court's limitations on his cross-examination.

**[\*P44]** The first assignment of error is overruled.

*State v. Scott*, 2010 Ohio 1919, 2010 Ohio App. LEXIS 1576 (2nd Dist. Apr. 30, 2010).  The court of appeals also recited at length the evidence presented at trial.  *Id.* at ¶¶ 3-16.

In his Traverse, Scott argues the error was not harmless because the evidence against him was not strong (Doc. No. 24, PageID 5151-5153).  The Magistrate Judge disagrees.  There was a great deal of physical evidence linking Scott to the murder.  While he has "explanations" for each of these pieces of physical evidence, taken together the explanations are not credible.  Rismiller was not called as an expert witness on the DNA evidence, so impeaching her with her

prior errors regarding DNA evidence would not significantly impeached the DNA evidence presented.  The trial judge thoroughly explored pre-trial the question whether Lona Westbrook received a deal on her drug trafficking charges for her testimony and the evidence was unequivocal that she did not.  While the Magistrate Judge agrees with the Second District that Scott's counsel should have been permitted to cross-examine her on her motivation, the impeachment would have been weak at best.

Therefore the court of appeals decision that the constitutional errors were harmless beyond a reasonable doubt is not an unreasonable application of clearly established Supreme Court law.  See *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

### Ground Two:  Failure of the Indictment to Contain an Essential Element

In his Second Ground for Relief, Scott asserts he was denied due process of law because the indictment for aggravated robbery did not identify the predicate theft offense and was amended during trial to include the *mens rea* element of recklessness.  In the body of the Petition, he argues this also deprived him of his right to have the case presented to the grand jury (Petition, Doc. No. 2, PageID 37).

This claim was raised in Scott's Second Assignment of Error on direct appeal and decided by the Second District as follows:

> **[*P45]**  Scott's  second  assignment  of  error  states:
>
> **[*P46]**  "THE  INDICTMENT  ON  THE  AGGRAVATED ROBBERY COUNT IS DEFECTIVE BECAUSE IT DOES NOT IDENTIFY A SPECIFIC PREDICATE THEFT OFFENSE AND THE COURT ERRED IN PERMITTING IT TO BE AMENDED TO INCLUDE THE SUPERFLUOUS MENS REA ELEMENT OF 'RECKLESSNESS' IN VIOLATION OF SECTION 10,

ARTICLE I OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

[*P47] Scott contends that his charge of aggravated robbery was not properly presented to the grand jury and that he was not given adequate notice of the predicate theft offense, the commission or attempted commission of which is an element of aggravated robbery. He also argues that the trial court erred in permitting the State to amend the indictment to include the mens rea for aggravated robbery "when the trial was practically over" and in giving confusing jury instructions regarding the mens rea for aggravated robbery. Scott objected to the amendment of the indictment, but he did not object to the jury instructions. We have specifically addressed and rejected Scott's argument that an aggravated robbery indictment is defective if it fails to specify the predicate theft offense. "Because a bill of particulars is available if the defendant requires more specific notice of the charge against him, an indictment is sufficient, under Crim R. 7(B), if it alleges an offense using the words of the statute specifying the offense." *State v. Landgraf*, Montgomery App. No. 21141, 2006 Ohio 838, at P11, citing *State v. Landrum* (1990), 53 Ohio St.3d 107, 119, 559 N.E.2d 710. See, also, *State v. Smith* (Feb. 28, 2003), Montgomery App. No. 19370, 2003 Ohio 903. Scott did not ask for a bill of particulars to clarify the alleged uncertainty about the predicate offense. The fact that the indictment did not name the particular theft offense did not render the indictment fatally defective. *Smith at P16*.

[*P48] Scott also argues that the trial court erred in permitting the State to amend the indictment to include the term "recklessly," when, as a matter of law, aggravated robbery with a deadly weapon under R.C. 2911.01(A)(1) is a strict liability offense.

[*P49] We note that *State v. Colon*, 118 Ohio St.3d 26, 2008 Ohio 1624, 885 N.E.2d 917 ("*Colon I*") was decided during the course of Scott's trial. *Colon I* held that the omission of the mens rea element of recklessness in a robbery indictment under R.C. 2911.01(A)(2) was constitutional error when it permeated the defendant's entire trial. The ramifications of that decision were unclear for some time thereafter. [3] See *State v. Colon*, 119 Ohio St.3d 204, 2008 Ohio 3749, 893 N.E.2d 169 ("*Colon  II*"). However, *Colon I* dealt with aggravated robbery causing physical harm under R.C. 2911.02(A)(2), which is not the section under which Scott was indicted.

> 3 The ramifications of *Colon I* and its progeny are arguably still unclear.

[*P50] Aggravated robbery with a deadly weapon is, indeed, a strict liability offense. *State v. Lester*, 123 Ohio St.3d 396, 2009 Ohio 4225, at P1, 916 N.E.2d 1038. "[T]he General Assembly, by not specifying a mens rea in R.C. 2911.01(A)(1), plainly indicated its purpose to impose strict liability as to the element of displaying, brandishing, indicating possession of, or using a deadly weapon." *Id.* at P32. Thus, the amendment arguably *increased* the State's burden of proof. Moreover, defense counsel conceded at trial that he would not have asked different questions of the witnesses or otherwise adjusted his trial strategy if the indictment had originally included the element of recklessness. Although, in hindsight, the amendment to include "recklessness" was erroneous, it was not prejudicial to Scott under the facts presented here.

[*P51] Finally, Scott argues that the trial court's jury instructions incorporating the element of recklessness for aggravated robbery confused the jury as to the State's burden of proof on the predicate theft offense. The pertinent instructions were:

[*P52] "Count One of the indictment charges Aaron Scott with Aggravated Robbery. Before you can find him guilty of Aggravated Robbery, you must find beyond a reasonable doubt that on or about the 22nd day of May, 2004, and in Montgomery County, Ohio, that Aaron Scott, in recklessly attempting or committing a theft offense, did have a deadly weapon on or about his person or under his control and displayed the weapon, brandished it, indicated that he possessed it, or used it.

[*P53] "An essential element of aggravated robbery is proof that the defendant *recklessly* committed or attempted to commit a theft offense. A person acts 'recklessly' when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. ***

[*P54] "To 'attempt' to commit a theft offense is to purposely -- that is, with specific intention -- to do anything which is an act constituting a substantial step in the course of conduct planned to culminate in the commission of the crime of theft. ***

11

[**\*P55**] "What must be committed or attempted is a 'theft offense.' The term 'theft offense' is defined as knowingly obtaining or exerting control over the property owned by another, without his consent, with purpose to deprive him of that property. You will notice that to constitute a theft offense, there must be a 'knowing' obtaining, or exerting of control over a person's property. A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result. Knowingly means that a person is aware of the existence of the facts and that his acts will probably cause a certain result. \*\*\*"

[**\*P56**] Scott claims that "recklessness" should have modified, if anything, the possession of the deadly weapon and that, the way the instruction was given, the jury could have concluded that reckless, rather than knowing and purposeful, conduct was required to commit the theft offense.

[**\*P57**] Although the element of recklessness was inartfully inserted into the jury instructions on aggravated robbery, the trial court did specifically instruct the jury that the mens rea for the underlying theft offense was knowingly and purposefully, and it defined these terms. We are unpersuaded that the improper aggravated robbery instruction led the jury to believe that Scott could be found guilty if he committed the theft offense recklessly.

[**\*P58**] Moreover, because Scott did not object to the jury instruction, he has waived all but plain error. Crim.R. 30(A). Plain error may be noticed if a manifest injustice is demonstrated. Crim.R. 52(B); *State v. Herrera*, Ottawa App. No. OT-05-039, 2006 Ohio 3053. In order to find a manifest miscarriage of justice, it must appear from the record as a whole that but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804. The disputed issue in the case was who killed Stapleton and under what circumstances, and there was more than sufficient evidence for the jury to have made the decision it did. The jury instructions given by the trial court did not create a manifest miscarriage of justice.

[**\*P59**] The second assignment of error is overruled.

*State v. Scott,* 2010 Ohio 1919, 2010 Ohio App. LEXIS 1576 (2nd Dist. Apr. 30, 2010).

The Respondent asserts that the jury instruction portion of this Ground for Relief is procedurally defaulted because the court of appeals enforced the contemporaneous objection rule

against Scott and only considered this claim on a plain error basis (Supplemental Return of Writ, Doc. No. 19, PageID 2593-2597). Scott makes clear in his Traverse that the jury instruction argument on appeal was not a separate assignment of error, but was made to show the confusion which resulted from amending the indictment. Therefore the jury instruction argument will not be considered by this Court as a separate claim or sub-claim.

As Scott phrases this claim in his Petition, it is that (1) he was not given adequate notice of the required *mens rea* that the State of Ohio was required to prove at trial on the aggravated robbery charge and (2) he "was denied the right to have his charges properly presented to the grand jury in violation of section 10 article I of the Ohio Constitution." (Doc. No. 2, PageID 37.)

Count One of the Indictment reads:

> The grand jurors of the County of Montgomery, in the name, and by the authority of the State of Ohio, upon their oaths do find and present that AARON SCOTT, on or about May 22, 2004 in the County of Montgomery, aforesaid, and State of Ohio, in attempting or committing a theft offense as defined in Section 2913.01(K) of the Revised Code, or in fleeing immediately after the attempt or offense, did have a deadly weapon, to wit: a knife, on or about his person or under his control and either displayed the weapon, brandished the weapon, indicated possession of the weapon or used the weapon; contrary to the form of the statute (in violation of section 2911.01(A)(1) of the Ohio Revised Code) in such case made and provided, and against the peace and dignity of the State of Ohio.

(Indictment, Supp. Return, Doc. No. 19, Ex. 1, PageID 2625.) This Count of the Indictment has no mens rea element at all in it[1]. While Scott was being tried, on April 9, 2008, the Ohio Supreme Court handed down *State v. Colon*, 118 Ohio St. 3d 26, 885 N.E. 2d 917 (2008)("Colon I"), where it held that omission of an essential element from an indictment is a structural error

---

[1] It also does not specify the predicate theft offense. Scott complained of this omission on direct appeal, but does not pursue it in this Court.

not subject to harmless error analysis.  On reconsideration, on July 31, 2008, well after Scott's

trial was over, the Ohio Supreme Court held *Colon I* is prospective only in its application and the

syllabus in *Colon I* is confined to the facts of that case. *State v. Colon*, 119 Ohio St. 3d 204

(2008)(*Colon II*).  Then, in *State v. Horner*, 126 Ohio St. 3d 466 (2010), the court held

> [W]hen an indictment fails to charge a *mens rea* element of the
> crime but tracks the language of the criminal statute describing the
> offense, the indictment provides the defendant with adequate
> notice of the charges against him and is, therefore, not defective. ...
> *Colon I* is overruled, and *Colon II* is overruled to the extent that it
> holds such an indictment is defective. Further, we hold that failure
> to timely object to a defect in an indictment constitutes waiver of
> the error. Crim. R. 12(C)(2)(objections to defect in indictment
> must be raised before trial). Any claim of error in the indictment in
> such a case is limited to plain-error review on appeal. *State v.
> Frazier* (1995), 73 Ohio St. 3d 323, 652 N.E. 2d 1000; Crim. R.
> 52(B)."

*Id.* at 473.  As the court of appeals notes and as is evident from the subsequent history of *Colon*

*1,* the decision caused a great deal of confusion in the Ohio courts when it came down and for

sometime thereafter.  What is clear from the court of appeals opinion in this case is that *Colon 1*

made recklessness an essential element of aggravated robbery under Ohio Revised Code §

2911.01(A)(2)(serious physical harm) but not of aggravated robbery under Ohio Revised Code §

2911.01(A)(1)(deadly weapon).  Under no version of *Colon 1* was there any mens rea required to

be proved by the State for conviction under Ohio Revised Code § 2911.01(A)(1).  As Scott

argued on appeal and the court of appeals found,  aggravated robbery in the form Scott was

accused of committing is a strict liability offense for which no guilty mental state is required.

Thus as the court of appeals held by adding "recklessness" on the State's motion, apparently in

reaction to *Colon 1*, the trial court raised the burden of proof on the State.  Scott also complains

that it was done late in the trial after the State had presented almost all its evidence, but that also

14

benefited Scott: if the State had not shown the supposedly required recklessness by that point, it would probably not have been able to show it.

The Grand Jury Clause of the Fifth Amendment is not applicable to the States. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir. 2006)(*Apprendi* does not change this result). Thus Scott has no valid federal constitutional claim that no grand jury ever returned an indictment charging him with recklessly committing aggravated robbery.

However, a criminal defendant is entitled to adequate notice of the charges against him. *Russell v. United States*, 369 U.S. 749 (1962), holds the sufficiency of a federal indictment is to be measured by the following criteria:

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

369 U.S. at 763-64. While the right to grand jury indictment has not been extended to the States, these criteria for an adequate charging document are applicable as a matter of due process. *Valentine v. Konteh,* 395 F. 3d 626, 631 (6th Cir. 2005), *citing De Vonish v. Keane,* 19 F.3d 107, 108 (2nd Cir. 1994); *Fawcett v. Bablitch*, 962 F.2d 617, 618 (7th Cir. 1992); see also *Isaac v. Grider*, 211 F.3d 1269, 2000 WL 571959, at *4 (6th Cir. 2000); *Parks v. Hargett,* 1999 U.S. App. LEXIS 5133, 1999 WL 157431, at *3 (10th Cir. 1999).

Count One of the Indictment in this case advised Scott that he must defend against the charge that on May 22, 2004, he robbed someone a knifepoint. As the grand jury pointed out, if he needed more detail to defend, he could have filed a bill of particulars, which he never did.

The Indictment as returned provided Scott with constitutionally sufficient notice of the charge he must defend against.  Recklessness is not an essential element of aggravated robbery under Ohio Revised Code § 2911.01(A)(1) and never has been, even while *Colon 1* was the law in Ohio, so its omission from the Indictment is immaterial.

Scott has cited no authority to show that the court of appeals decision on this issue is contrary to or an unreasonable application of clearly established Supreme Court precedent. Ground Two should be dismissed with prejudice.

### Ground Three:  Lack of Proof of the Chain of Custody

In his Third Ground for Relief, Scott asserts that he was denied a fair trial when the State was not required to prove the chain of custody with respect to some of the physical evidence against him.  This claim was not raised on direct appeal, but only on Scott's application to reopen the direct appeal (See Petition, Doc. No. 1, at PageID 33, listing arguments raised on the Ohio App. R. 26(B) application).

The court of appeals denied the application, holding that Scott had presented no colorable claims of ineffective assistance of appellate counsel.  As to this particular claim, the court held:

> Scott has not argued, with any specificity, that there were other problems at the crime lab, such as a chain of custody issue, which would have had a reasonable probability of success if argued on appeal.  Moreover, some of the documents on which he relies were not part of the trial court record.  As such, they cannot form a basis of reversal on appeal.

*State v. Scott,* Case No. 22745 (Ohio App. 2nd Dist. Jan. 26, 2011)(unpublished, copy at Doc. No. 19-1, PageID 2921.)

Scott's Third Ground for Relief attempts to turn this holding on its head, to insist that it was the State's burden to prove that there were no gaps in the chain of custody.  He presents no United States Supreme Court precedent to that effect.  He essentially argues that the court of appeals did not followed the proper process under App. R. 26(B), but that is a question of state law; Scott has no federal constitutional right to insist that the Ohio appellate court follow a particular procedure.

Scott also misapprehends the holding in *Morgan v. Eads*, 104 Ohio St. 3d 142 (2004). There the Ohio Supreme Court answered a question of law certified by Magistrate Judge William Baughman to deal with a long-standing question of the application of the AEDPA to Ohio law: is an application for reopening under Ohio R. App. P. 26(B) part of direct appeal or is it a collateral proceeding?  The court made clear that additional material submitted in support of the application was to show ineffective assistance of appellate counsel, e.g., correspondence between a defendant and his appellate attorney on assignments of error to be raised.  Ohio law is very clear that new evidence pertaining to trial court error cannot be introduced on direct appeal, so that if a defendant wishes to raise an issue of trial court error which depends on evidence outside the appellate record, he must move for post-conviction relief under Ohio Revised Code § 2953.21.  That evidence cannot be introduced for the first time as part of a 26(B) proceeding.

An Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, not the underlying substantive arguments. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir.  2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001).  "The *Lott* court explained that permitting an Ohio prisoner to raise a substantive claim in a Rule 26(B) motion "would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits

17

review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel." *Id.*

There is no federal constitutional right to insist on strict proof of the chain of custody of physical evidence in a criminal case. If there were such a substantive right, Scott would have forfeited his procedural right to have it considered on the merits in federal habeas by delaying its presentation to his application for reopening. Ground Three should be dismissed on the merits.

## Ground Four: Ineffective Assistance of Trial Counsel

In his Fourth Ground for Relief, Scott asserts he received ineffective assistance of trial counsel in several respects (1) failure adequately to cross-examine the lead detective regarding the absence of Scott's fingerprints on the murder weapon, (2) failure to present to the jury the Miami Valley Regional Crime Laboratory documents which Scott asserts would have shown that Amy Rismiller had contaminated physical evidence in the past, (3) failure to object to the bite mark evidence as inadmissible, and failure to challenge the narrow focus of police investigators on Scott rather than on other possible suspects. (Petition, Doc. No. 2, PageID 39-41.)

To the extent this claim depends on evidence outside the direct appeal record, it has been procedurally defaulted because Scott has never filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 and the time within which he might have done so has long since expired.

Even though the State has not expressly pled procedural default as to this Ground for Relief, it is not inappropriate for the Court to raise a procedural default defense *sua sponte*. *White v. Mitchell,* 431 F.3d 517, 524 (6th Cir. 2005); *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th

Cir. 2004); *Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002)(§2254 capital case)*; White v. Mitchell,* 431 F.3d 517, 514 (6th Cir. 2005)(capital case); *Elzy v. United States,* 205 F.3d 882 (6th Cir. 2000)(§2255 case).  Procedural default may be waived by failing to assert it.  *Getsy v. Mitchell,* 495 F.3d 295, 317 (6th Cir. 2007)(en banc)(citing *Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir. 2006); *Gray v. Netherland*, 518 U.S. 152, 166 (1996).  Even if waived by the State, it may be raised *sua sponte* by the federal courts.  *Lovins v. Parker*, 712 F. 3d 283 (6th Cir. 2013), *citing Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).

Instead of raising this claim in a petition for post-conviction relief, Scott raised it for the first time in his application for reopening the appeal under Ohio R. App. P. 26(B).  As noted above with respect to *Morgan v. Eads,* the sole purpose of such a proceeding is to litigate claims of ineffective assistance of appellate counsel.  By raising a claim for the first time in a 26(B) proceeding, one does not preserve the claim for merits consideration in habeas corpus because a claim of ineffective assistance of appellate counsel is a different claim from, among other things, a claim of ineffective assistance of trial counsel.  *Wogenstahl, supra*.

The Second District Court of Appeals considered Scott's claims of ineffective assistance of trial counsel as they underlay his 26(B) Application.  That court held:

### Fingerprint Evidence

> Scott claims that trial counsel should have argued that the absence of his fingerprints on the knife showed that he had not possessed the knife. Scott also contends that trial counsel failed to properly advance an alibi defense, and he views the absence of fingerprint evidence as alibi evidence. Scott further asserts that trial counsel failed to make good use of the fact that fingerprints on the victim's vehicle were never identified. Scott argues that appellate counsel should have challenged trial counsel's effectiveness on these bases.
>
> The record demonstrates that trial counsel did question the lead detective about the fingerprints found (and not found) on the victim's vehicle. Although the absence of Scott's fingerprints was

relevant, it did not eliminate him as a suspect, nor did it establish an alibi. Appellate counsel did not act ineffectively in failed [sic] to pursue this issue on appeal.

* * * [Omitted paragraph on matter not raised in habeas.]
.

### Narrow Focus of Investigators

Scott argues that neither trial nor appellate counsel pointed out that the police investigation and laboratory testing conducted in this case was "conducted SOLELY and ONLY against [him]," i.e., that the investigation focused on Scott without pursuing other possible perpetrators or other rational conclusions.

Scott did not become a suspect until seventeen months after the crime, when a resident of a nearby apartment complex, who was also an acquaintance of Scott, told a police officer who was canvassing the complex that Scott had come to her apartment, out of breath and covered with blood, on the night of the murder. Only then did Scott become a suspect, and police were able to match his DNA to items found in the vicinity of the murder. Prior to that time, the police had pursued other suspects, including the ex-husband of the victim's girlfriend. The DNA evidence gave the police a solid reason to pursue Scott as their primary suspect. Appellate counsel did not act ineffectively in failing to raise an argument challenging the investigators' focus on Scott.

### Bite Marks

Finally, Scott contends that bite mark evidence offered by Dr. Franklin Wright on behalf of the State was inadmissible because Wright relied on photographs and had not examined the victim himself. He claims that trial counsel's failure to raise this issue was plain error and should have been addressed by appellate counsel.

Scott has cited no authority for his claim that Wright could not rely on photographs as a basis for his opinion. Evid.R. 703 permits an expert to base an opinion or inference on evidence perceived by the expert or admitted into evidence at the hearing. The photograph of the bite mark on the victim's chest was admitted when the coroner testified about the autopsy. Moreover, Scott admitted at trial to biting the victim on the chest, and DNA testing corroborated Wright's conclusion by establishing that Scott's saliva was on the victim's shirt. Appellate counsel was not ineffective in failing to argue on appeal that the bite mark analysis offered by a dental expert should have been excluded.

20

*State v. Scott,* Case No. 22745 (Ohio App. 2nd Dist. Jan. 26, 2011)(unpublished, copy at Doc. No. 19-1, PageID 2924-2926.)  To summarize, the court of appeals found no ineffective assistance of appellate counsel in failing to claim ineffective assistance of trial counsel relating to these three items.  The claim of ineffective assistance of trial counsel for failure to present the Crime Lab report is even more defaulted because, so far as Scott's Petition and Traverse show, that claim has never been presented to the Ohio courts in any proceeding[2].

Therefore Scott's Fourth Ground for Relief should be dismissed with prejudice.

### Ground Five:  Denial of Fair Trial

In his Fifth Ground for Relief, Scott complains that the trial judge abused his discretion by allowing Amy Rismiller to testify at all and then by not allowing defense counsel to cross-examine her about prior contamination of evidence incidents.  He also complains of admission in evidence of photograph no. 72 which he says is a red t-shirt which is highly suggestive and very prejudicial (Petition, Doc. No. 2, PageID 41).

The issues surrounding the testimony of Ms. Rismiller are dealt with under Ground One above.  Scott does not raise any additional constitutional grounds for relief in this part of Ground Five.

The court of appeals dealt with issues surrounding photograph no. 72 in its decision denying Scott's 26(B) application for reopening:

---

[2] Scott notes in the Traverse that it was marked as an exhibit, but that does not mean it would have been admitted, given the trial judge's ruling about cross-examination of Ms. Rismiller on this point.

**Photograph No. 72**

> Scott contends that appellate counsel should have challenged the trial court's ruling that the "highly suggestive and very prejudicial" photograph number 72 could be admitted.  Photograph 72 depicted a red t-shirt as it was found in an apartment complex across the street from where the murder occurred. Scott was seen in this complex on the night of the murder. One of the State's witnesses had told the police that Scott came to her apartment on the night of the murder and asked for a new shirt. When the t-shirt was analyzed at the crime lab, the victim's blood was found in three spots, and Scott's DNA was found in the underarms of the shirt.
>
> The photograph of the shirt was neither suggestive nor unfairly prejudicial, in itself.  Both the photograph and the t-shirt were properly admitted, as were the DNA tests conducted on the shirt. There is no colorable claim that appellate counsel was ineffective in failing to challenge the admission of the picture of the shirt.

*State v. Scott,* Case No. 22745 (Ohio App. 2nd Dist. Jan. 26, 2011)(unpublished, copy at Doc. No. 19-1, PageID 2925.)

Scott merely asserts that the t-shirt and a photograph of it taken at the crime scene were "highly suggestive" and "very prejudicial" without making any argument or suggesting why that would make their admission unconstitutional.  These were indeed very probative pieces of evidence because they scientifically linked the victim (through his blood on the shirt) with Scott (through his DNA on the shirt and Westbrook's testimony that he came to her apartment shirtless on the night of the murder).  They were indeed very damaging to Scott's position, but that does not make them prejudicial.

Scott has not shown that the court of appeals' decision on the t-shirt and the photograph are contrary to or an objectively unreasonable application of clearly established Suprme Court precedent.  Ground Five should be dismissed with prejudice.

**Ground Six:  Ineffective Assistance of Appellate Counsel**

In his Sixth Ground for Relief, Scott asserts he received ineffective assistance of appellate counsel when his counsel failed to raise the claims he sought to raise in his application for reopening.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id. citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id. citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir.

2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986).  However, failure to raise an issue can amount to ineffective assistance.  *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Joshua v. Dewitt,* 341 F.3d 430, 441 (6th Cir. 2003);  *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); and *Mapes v. Coyle,* 171 F.3d 408, 427-29 (6th Cir. 1999).

The two issues Scott mentions in his Petition are the Confrontation Clause error with respect to Amy Rismiller and the chain of custody question (Petition, Doc. No. 2, PageID 42). He blatantly misquotes the Second District Court of Appeals on the second issue.  He says that court "concluded in there [sic] decision of the appellant's 26(B) application that 'a chain of custody issue, . . . would have had a reasonable probability of success if argued on appeal.'"  *Id.* What the court of appeals actually said was "Scott has not argued, with any specificity, that there were other problems at the crime lab, such as a chain of custody issue, which would have had a reasonable probability of success if argued on appeal."  *State v. Scott,* Case No. 22745 (Ohio App. 2nd Dist. Jan. 26, 2011)(unpublished, copy at Doc. No. 19-1, PageID 2921.)  In other words, the court of appeals rejected the claim that a chain of custody argument would have probably succeeded if made on direct appeal.

And, of course, the Confrontation Clause claim was raised on direct appeal.  The court of appeals decided it was error for the trial court not to permit cross-examination of Ms. Rismiller on past mistakes in handling physical evidence.  Although appellate counsel made the argument, it did not succeed because the court of appeals found the error harmless in light of the strong evidence of Scott's guilt.

Scott has not shown that the court of appeals' decision of the 26(B) application was contrary to or an unreasonable application of *Strickland* and its progeny.  Ground Six should be

dismissed with prejudice.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because the Second District Court of Appeals found constitutional error on the Confrontation Clause claim, Scott should be granted a certificate of appealability on the question whether that error was harmless. Because reasonable jurists would not disagree with the other conclusions in this Report, the certificate of appealability should be limited to the First Ground for Relief. Petitioner should be permitted to proceed *in forma pauperis* on appeal.

July 11, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).